IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HENRY MATTON,

                              Plaintiff,                        OPINION & ORDER

          v.
                                                                12-cv-406-wmc
CAROLYN COLVIN,
Commissioner for Social Security,

                              Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Henry Matton seeks judicial review of a final decision of the Commissioner of Social Security finding him not disabled within the meaning of the Social Security Act.   Matton principally contends that the court must remand because Administrative Law Judge ("ALJ") Robert Iafe: (1) erred in rejecting the opinion of Dr. John Cragg, a treating physician; (2) made a flawed credibility assessment of Matton's testimony; and (3) improperly gave weight to a medical expert who examined Matton on behalf of a worker's compensation insurance company.   For the reasons set forth below, the court will remand the case to the Commissioner for further proceedings.

BACKGROUND

I.  Background

On February 2, 2011, the ALJ issued a decision denying Matton's application for Disability Insurance Benefits.  (AR 75.)[1]  Matton filed a timely request for review by the Appeals Council, which also denied his request for benefits on May 7, 2012, making the

_____

[1] The cites in this Order are drawn from the Administrative Record.  (Dkt. #7.)

ALJ's decision the final determination of the Commissioner.  (AR 1.)  On June 8, 2012, Matton filed a timely complaint for judicial review pursuant to 42 U.S.C. § 405(g).

Plaintiff Matton is a 46-year-old man alleging disability due to a back injury that causes him severe pain.  (AR 67.)  He alleges a disability beginning on May 12, 2007, when he first fell and injured himself.  (AR 68.)  Since then, Matton has worked only two days, part-time, for a previous employer and has engaged in no other substantial gainful activity.  (AR 68.)  At the hearing, Matton testified that he could not work because of back pain.  (AR 47.)


## II. Relevant Medical Evidence

Since 2007, Matton has seen a number of health care providers for complaints of pain from his May 12th fall.[2]  Matton went to the emergency room immediately after his fall, but was told that nothing was wrong.  (AR 251; Pl.'s Br. (dkt. #11) 2.)  The following Monday, Matton saw his family physician, Dr. Larry Carlson.  (AR 341.)  Dr. Carlson ordered thoracic spine and chest x-rays, which were normal.  (AR 70, 343-44.)  Dr. Carlson prescribed cyclobenzaprine, a muscle relaxant, and told Matton to follow-up if there was no improvement.  (AR 341.)  Experiencing none, Matton visited Dr. Carlson several more times over the next few months.  (AR 345-54.)  On May 21, 2007, Dr. Carlson directed Matton to stay home from work until at least May 30, 2007, and also referred him to physical therapy.  Matton attended two sessions of physical therapy, but reported that these actually increased his pain.  (AR 348-50.)

---

[2] This summary is organized somewhat chronologically, but also centers around the opinion of each health care provider.

On May 30, 2007, Dr. Carlson ordered a bone scan to look for a fractured rib and noted that Matton might not be ready to return to work for another month.  (AR 351.) Matton received his bone scan on June 11, 2007, and the test revealed a possible callus in his ribs.  (AR 353.)  Matton then followed-up with Dr. Carlson, who referred him to Dr. Eric Carlsen, a physical medicine and rehabilitation specialist, for a consultation.  (AR 354.)

On July 9, 2007, Matton saw Dr. Carlsen who agreed that the fall probably fractured a rib which was causing pain.  (AR 357-58.)  Over the next four months, Matton saw Dr. Carlsen five more times.  (AR 360-78.)  Dr. Carlsen kept Matton home from work and ordered x-rays, a CT scan and an MRI.  (AR 362-80.)  These tests did not reveal any likely source of Matton's pain, but showed some degenerative changes in Matton's thoracic spine. (AR 70.)

On November 11, 2007, Matton saw Dr. Carlsen for the last time.  (AR 378.)  At the visit, Dr. Carlsen "spoke with [Matton] and his wife frankly" about his condition.  (AR 379.)  According to Dr. Carlsen, Matton was "adamant that he could not return to work." (AR 378.)  Dr. Carlsen responded, however, that he felt six months of recovery time was reasonable.  (AR 379.)  Dr. Carlsen's report also indicated that he:  (1) was having "a hard time continuing to fill out" a form that would "substantiate total disability" for Matton to stay home from work; and (2) would no longer do so.  (*Id.*)  Dr. Carlsen opined that Matton had the capacity for at least light medium work, based on his objective findings.  (*Id.*)

On March 11, 2008, Matton returned to Dr. Carlson, who recommended another orthopedic specialist, Dr. John Cragg.  (AR 387.)  That same day, Matton saw Dr. Cragg for the first time; he eventually visited *a total of twelve times* from March 2008 to November 2009.  (AR 389-615.)  Throughout this period, Dr. Cragg routinely expressed his opinion

that Matton was disabled from work and that he should pursue social security benefits. (*See, e.g.*, AR 461, 481, 505, 598, 615.)  Under Dr. Cragg's care, Matton tried injections, medication, physical therapy and a TENS unit.

Dr. Cragg also referred Matton to two separate doctors.  The first of these was Dr. Mustafa Farooque, a spine specialist.  After examining Matton and reviewing his x-rays, CT scan and MRI, Dr. Farooque concluded that the "[e]xact cause of [Matton's] chronic pain that makes him disabled for long-term is not very clear."  (AR 330.)  Dr. Farooque could also offer no surgical options to Matton.  (*Id.*)  The second referral was to Dr. Edward Santos, a professor at the University of Minnesota and an orthopedic surgeon.  After reviewing Matton's medical records and examining him personally, Dr. Santos opined that Matton suffered from mid thoracic pain, secondary to thoracic facet arthrosis.[3]  (AR 398).  Among other causes, a sudden fall or trauma may bring on this condition and cause mild to severe pain.  Dr. Santos also told Matton to contact him to proceed with treatment options, although the record is unclear as to whether Matton ever followed-up.

On July 25, 2008, Dr. William Monacci examined Matton as part of a medical evaluation for worker's compensation insurance purposes.  (AR 404.)  Dr. Monacci's report recounted Matton's significant medical history and ultimately concluded that Matton showed signs of "symptom magnification."   (AR 414.)  Dr. Monacci noted Matton's "minimal effort when participating in any range of motion activities."  (*Id.*)  With regard to employment, Dr. Monacci did not feel Matton needed any limits or restrictions and that he

---

[3] Thoracic facet arthrosis involves inflammation or degeneration that develops in the facet joints of the spine, with the nerves to the facet joints capable of conveying severe and diffuse pain.   *Facet Joint Arthritis*, UCLA Spine Center, http://spinecenter.ucla.edu/body.cfm?id=120 (last visited May 2, 2014).

4

could return to full-time work activity.  (*Id.*)  On September 19, 2009, Dr. Monacci also submitted a supplemental report responding to follow-up inquiries.  (AR 431.)

### III. The Administrative Hearing and Decision

On November 30, 2010, the ALJ held a hearing at which Matton testified.  Gregory Jones, a vocational expert, also testified at the hearing.  The ALJ asked Mr. Jones a series of hypothetical questions involving a person with Matton's limitations.  (AR 58-60.)  Mr. Jones testified that a person with those limitations could not perform any of Matton's past relevant work.  (AR 58.)  When the ALJ asked about other work, however, Mr. Jones opined that a person with Matton's limitations could perform sedentary work, citing as examples a charge account clerk and an information clerk.   (AR 59-60.)  He also explained that there were such jobs available in the national economy and in Wisconsin.  (AR 60.)  Mr. Jones noted, however, that there would not be any jobs available for a person who had to take unscheduled 15-minute breaks each hour or who had to miss three or more days per month due to impairments.  (*Id.*)

On February 2, 2011, the ALJ issued his decision.  In short, the ALJ found Dr. Cragg's medical findings unpersuasive in light of the other medical evidence.  (AR 73-74.) The ALJ also concluded that even though Matton could not perform past relevant work, there were jobs available to him that only required sedentary work.  (AR 74.)  For these reasons, the ALJ determined that Matton was not under a disability within the meaning of the Social Security Act.  (*Id.*)

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

After reviewing the record in this case, the court concludes that the ALJ erred in analyzing Dr. Cragg's opinion and that this error requires remand. The court will also address Matton's arguments on the ALJ's credibility determinations and reliance on Dr. Monacci's opinion, although they may not, by themselves, require remand.

6

**I. The ALJ's Rejection of Dr. Cragg's Opinion**

Matton concedes, as he must, that there are several conflicting medical opinions in the record and that Dr. Cragg's is *not* entitled to the controlling weight under the treating source rule.[4]  (Pl.'s Br. (dkt. #11) 22-23); *see also* SSR 96-2p (explaining that a treating source's opinion does not receive controlling weight "when two medical sources provide inconsistent medical opinions about the same issue").  Even so, Matton argues that the ALJ did not adequately explain his reasons for rejecting outright Dr. Cragg's opinion as a treating physician.  Specifically, Matton notes that the ALJ failed to address the factors in 20 C.F.R. § 404.1527(c) for determining what weight, if any, to afford to a medical opinion.  These factors include:  the length of the relationship and frequency of examination; the nature and extent of the relationship; how well the source supports his opinion (*i.e.*, with objective evidence and laboratory tests); how consistent the opinion is with the rest of the record; and whether the source is a specialist in the relevant area.  20 C.F.R. § 404.1527(c).

In Matton's case, the ALJ devoted but a few paragraphs of his decision in explaining why he rejected Dr. Cragg's opinion.   For reasons that follow, this is insufficient given the importance of this medical opinion to the disposition of the case.  After summarizing Dr. Cragg's medical findings, the ALJ found that:

> [t]o some extent, Dr. Cragg plays the role of a vocational expert. Nonetheless, it appears clear to the ALJ that [Dr. Cragg's] assessments, if accepted, would rule out any range of competitive work. The ALJ, however, rejects these assessments.  Dr. Cragg does not present impressive medical findings or provide greater insight than other examiners. Whereas Dr. Cragg accepts the claimant's

---

[4] The "treating source rule," derived from 20 C.F.R. § 404.1527(c)(2), "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'"  *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (quoting 20 C.F.R. § 404.1527(c)(2)).

allegations as true, the ALJ has discussed multiple medical and lay reasons for discrediting the claimant.  Similarly, the ALJ rejects assessments or comments by Dr. Carlson, a family practitioner, that suggest the claimant is unable to work.   In addition to the other bases, Dr. Carlson, though a treating source like Dr. Cragg, essentially was a referring physician in this case, and the weight of the evidence from the referrals and other sources does not support "disability."  Other opinion evidence, including from Drs. Monacci and Eric Carlsen [is] better placed but, as comports with the latest state agency assessment (Ex. 28F), and in recognition of all medical and lay factors, the ALJ assigns a 10 pound weight restrictions and a 2 of 8 hour stand/walk restriction, but finds that the claimant can sit for 6 of 8 hours with regularly scheduled work breaks.

(AR 73-74.)

As a starting point, when an ALJ "chooses to reject a treating physician's opinion [he] must provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  That explanation must allow a reviewing court to conclude that the ALJ actually "weighed the merits of [a source's] opinion [and] engaged in the careful analysis required by the regulations and case law." *Id.*  To properly frame the ALJ's analysis, the regulations provide a checklist of factors to facilitate his legal reasoning and explanation of the evidence.   Such factors determine what weight the ALJ affords to the medical opinions in the record, providing transparency in the ALJ's reasoning for judicial review. *See* SSR 06-3p and § 404.1527(c).[5]  Upon appeal, the Commissioner cannot cure deficiencies in the ALJ's explanation by supplying his own evaluation of a medical opinion, nor is it

---

[5] If an ALJ does not properly analyze these factors and afford weight to an opinion, remand is warranted. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (remanding when "the ALJ failed to determine the weight to be accorded [a doctor's] opinion in accordance with Social Security Administration regulations").

appropriate for this court to engage in its *own* analysis of the factors -- "what matters are the reasons articulated *by the ALJ*." *Jelinek*, 662 F.3d at 812 (original emphasis).

In this case, the deficiencies with the ALJ's analysis are two-fold. *First*, the ALJ fails to discuss the § 1527(c) factors and ignores relevant evidence that might weigh in Matton's favor. Standing alone, this deficiency warrants remand. *See Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (reversing an ALJ even when her "decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927 [but] does not *explicitly address the checklist of factors* as applied to the medical opinion evidence") (emphasis added); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Beyond the lack of any explicit mention of § 1527(c)'s factors, the ALJ's opinion is problematic because it suggests that his decision was based entirely on how inconsistent he felt Dr. Cragg's opinion was with the rest of the record. There is nothing else in the decision, explicit or implicit, to suggest that the ALJ considered the remaining factors.[6]

Of course, the ALJ need not specifically mention every piece of evidence in the record, but he "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Goble v. Astrue*, 385 F. App'x 588, 593 (7th Cir. 2010).[7] For example, Dr. Cragg treated Matton for almost three years, a longer period than any other medical source, except perhaps Dr. Carlson, Matton's family doctor.

---

[6] The Commissioner apparently recognizes this because her briefing on this issue simply tries to persuade the court that Dr. Cragg's opinion was inconsistent with other medical opinions. (*See* Def.'s Opp'n (dkt. #15) 10-12.) Yet the Commissioner does not cite any case, statute or regulation for the proposition that the "inconsistency with the record" factor trumps the rest. (*Id.*) Nor does the Commissioner argue that an ALJ's discussion of this factor alone, without more, is enough to allow this court to conduct full, meaningful review. Like the ALJ, the Commissioner fails to even recognize the other factors in 20 C.F.R. § 1527(c). In so doing, the Commissioner all but agrees with Matton that the ALJ did not properly analyze and assign weight to Dr. Cragg's opinion.

[7] *See also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence.").

Dr. Cragg also saw Matton more times than any other medical source in the record.  Given the importance SSR 06-3p and § 1527(c) place on the length and frequency of a treatment relationship, these factors suggest that the ALJ should place higher weight on Dr. Cragg's opinion, rather than ignoring it.  *Cf. Thompson v. Colvin*, No. 12-cv-375, 2014 WL 1371290, at *6-7 (W.D. Wis. Apr. 8, 2014) (noting, among other errors, that in the context of a "not acceptable medical source," an ALJ erred in failing to consider the frequency of treatment). Moreover, Dr. Cragg is an orthopedic specialist, a field that is highly relevant to Matton's injury and diagnosis.  Consideration of these factors is absent from the ALJ's reasoning -- as is any discussion of how the factors weigh against others in the aggregate.  *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

This short summary provides a number of legitimate reasons to afford greater weight to Dr. Cragg's opinion.[8]  Without a discussion of the factors relevant to § 1527, however, the court has no way to determine whether the ALJ undertook the analysis required of him in this case.  *See Steele*, 290 F.3d at 941 ("[R]egardless [of] whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [the court's] review to the reasons supplied by the ALJ.").

A *second*, related problem with the ALJ's analysis is that it lacks enough discussion on the relative weight of the various medical opinions in the record, leaving the court unable to

---

[8] As previously noted, where some factors weigh in favor of an opinion and some weigh against, it is crucial for an ALJ to engage thoughtfully with *all* factors in determining what value to assign a medical opinion.  *Goble*, 385 F.App'x at 593.

review his decision-making process.  Like the ALJ's failure to articulate and actually reflect consideration of the appropriate checklist of factors, this error provides further cause for remand.  *See Tapia v. Astrue*, No. 11-cv-970, 2012 WL 3100380, at *9 (E.D. Wis. July 30, 2012) (remand is appropriate when "there is no explanation of what weight was actually given to [a medical] opinion as required by the Social Security rules"); *Edgar v. Astrue*, No. 09-cv-264, 2010 WL 56024, at *10 (W.D. Wis. Jan. 6, 2010)  ("If the administrative law judge did not  assign controlling weight to [a treating source's] opinion, then he was required to say how much weight he was giving it and to provide 'good reasons' for that weight.").

Here, the ALJ obviously rejected Dr. Cragg's assessments, but never indicated what weight, if any, he gave to the opinion, nor explained its significance relative to other medical sources.[9]  This omission not only demonstrates an insufficient explanation, but also contravenes SSR 96-2p, which requires that when a decision is not fully favorable to a claimant, the "decision . . . must be sufficiently specific to make clear to any subsequent reviewers the *weight* the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  (Emphasis added.)  Without an express finding as to the weight afforded to Dr. Cragg, there is little choice but to remand for further consideration.

Independently, the failure to evaluate the conflicting medical opinions under the § 1527 factors or to assign relative weight to those opinions would suggest remand; together, they require it.  Of course, the court does not intend to suggest what decision the ALJ must ultimately reach as to the weight assigned to Dr. Cragg's opinion.  Whatever the result,

---

[9] The ALJ's decision states that other opinion evidence is "better placed," but does not explain what this means.  (AR 74.)  Indeed, the phrase is little more than a conclusion, not an explanation *why* certain medical opinions deserve more weight than others.  SSR 96-2p requires both a statement of the weight the ALJ assigns to an opinion *and* an explanation as to why.

however, the ALJ must properly *explain* his decision, including a discussion of the relevant factors and identification of the weight given each medical opinion relative to others in the record.[10]

## II.  Matton's Remaining Issues

Matton's remaining arguments are that (1) the ALJ's assessment of Matton's credibility is flawed; and (2) the ALJ improperly gave weight to the opinion of Dr. Monacci. Having already found legitimate grounds for remand, the court need not address these issues.  *See Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("These flaws are enough to require us to remand [and] [w]e therefore needn't decide whether the reasons the ALJ gave in support of her adverse credibility finding . . . were so 'patently wrong' as to separately require remand.")  Because these issues closely relate to Matton's primary argument, the court nevertheless offers this limited guidance.

### A.  Matton's Credibility

With respect to the credibility determination, Matton argues that the ALJ failed to apply SSR 96-7p and incorrectly disregarded Matton's subjective complaints of pain.  (Pl.'s Br. (dkt. #11) 31.)  Ordinarily, credibility determinations are entitled to deference and this court "will uphold an ALJ's credibility determination if the ALJ [gives] specific reasons for the finding that are supported by substantial evidence."  *Moss*, 555 F.3d at 561; *see also* SSR

---

[10] If the current record is insufficient to allow the ALJ to perform this level of analysis, he may choose to seek out additional evidence to develop a full and fair record.  *See Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010).  The court will, however, leave to the ALJ's discretion whether additional information is required.

96-7p ("[T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.")

Still, an ALJ may not "disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record." *Moss*, 555 F.3d at 561; *see also* 20 C.F.R. § 404.1529(c); SSR 96-7p.  In this case, the ALJ ultimately found "multiple medical and lay reasons for discrediting the claimant."  (AR 74.) The ALJ began his assessment of Matton's RFC with something of a "cumulative" review of this evidence, first detailing the objective medical evidence that belies Matton's subjective complaints of pain, and then confirming that he had "given [Matton] the benefit of the doubt in concluding there is a reasonable basis for some pain." (AR 69.)  From there, the ALJ went on to discuss several pieces of evidence, including objective medical findings and Matton's daily activities.  On balance, this analysis comes much closer to providing the "specific reasons" required by SSR 96-7p than Matton's brief suggests.

The one area in which the court would suggest the ALJ may want to expand his reasoning on remand is in discussing Dr. Cragg's 2009 diagnosis of myofascial pain. Beyond failing to explain why Dr. Cragg's overall opinion was not credible, the ALJ did not discuss this diagnosis in terms of *whether it undermined Matton's credibility*.  For reasons the court has already discussed, the ALJ did not provide sufficient reasons for rejecting Dr. Cragg's opinion.  If, on remand, the ALJ decides to give *more weight* to Dr. Cragg's opinion, he must also determine what impact, if any, Dr. Cragg's diagnosis of myofascial pain has on Matton's credibility.

13

### B. The "Adversarial" Nature of Dr. Monacci's Opinion

Matton also argues that the ALJ should have assigned only minimal weight to Dr. Monacci's opinion because "he worked for an insurance carrier in an adversarial proceeding."[11]  (Pl.'s Br. (dkt. #11) 41.)  Matton correctly points out that social security proceedings are non-adversarial.  He argues that it is improper for a non-adversarial proceeding to rely on adversarial evidence.

In general, 20 C.F.R. § 404.1527 identifies three types of medical opinions:  (1) opinions from treating sources; (2) opinions from examining, but not treating, sources; and (3) opinions from non-examining sources.  Matton emphatically states, however, that "a fourth exists -- a physician who is retained by an adverse party in litigation such as a worker's compensation claim."  (Pl.'s Br. (dkt. #11) 41.)  Because Dr. Monacci falls into this "fourth" category, Matton argues the ALJ must assign his opinion less weight than an opinion from a treating physician like Dr. Cragg or other consulting physician.  Matton cites no relevant case, statute, or regulation for this novel proposition.

While the court largely agrees with the Commissioner's position, the "adversarial nature" of a medical opinion is (at least in this case) an "other factor" that the ALJ may use when evaluating and weighing medical opinions under § 1527.   Notwithstanding this guidance, it is up to the ALJ ultimately to determine how *much* less, and to use the § 1527 factors to discuss the overall weight he assigns to the opinion.  *See, e.g.,* 20 C.F.R. § 404.1527(c)(6) ("the amount of understanding of our disability programs and their

---

[11] While Matton's opening brief argues that the ALJ must give *less* weight to Dr. Monacci because his opinion is "adversarial," Matton's reply brief appears to stake out an even more extreme position that the ALJ must give it *no* weight.  (*See* Pl.'s Reply (dkt. #16) 14.)  To the extent that Matton would have the court conclude, as a matter of law, that the ALJ can assign *no* weight to Dr. Monacci's opinion, Matton's argument is rejected.  The social security regulations explicitly direct the ALJ to "evaluate *every* medical opinion [he] receive[s]."  20 C.F.R. § 404.1527(c) (emphasis added).

evidentiary requirements that an acceptable medical source has" is an example of an "other factor"); *see also Green v. Colvin*, No. 12-cv-00094, 2013 WL 4647222, at *10 (N.D. Ind. Aug. 28, 2013) (a doctor's failure to consider the claimant's history of substance abuse is an "other factor" with which to evaluate the doctor's opinion); *Starcher v. Colvin*, No. 12-cv-01444, 2013 WL 5504494, at *3 (S.D.W. Va. Oct. 2, 2013) (lifestyle or daily activates contrary to medical evidence or opinions is an "other factor"); *Wyatt v. Astrue*, No. 11-cv-00874, 2012 WL 2358149, at *8 (S.D. Ind. June 20, 2012) (a source's consistency with opinions from employers is an "other factor").


ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Henry Matton's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 5th day of May, 2014.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

15